IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Venita Isadore, ) | |
| ) | Civil Action No. 6:06-2065-JFA-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on October 2, 2003, and September 26, 2003, respectively, alleging that she became unable to work on September 8, 2003. The applications were denied initially and on reconsideration by the Social Security

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Administration. On August 9, 2004, the plaintiff requested a hearing. The administrative law judge, before whom the plaintiff, her attorney and a vocational expert appeared on January 13, 2005, considered the case *de novo*, and on January 27, 2006, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on May 19, 2006. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.
>
> (2)    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> (3)    The claimant's degenerative disc disease, status post lumbar myelography with lysis of adhesions are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).
>
> (4)    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> (5)    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> (6)    The claimant has the following residual functional capacity: The claimant can lift and carry ten pounds occasionally. She needs a sit/stand option. The claimant can never crouch, crawl, work at unprotected heights, operate leg controls, push, pull, squat or climb ropes, ladders or scaffolds. She can occasionally bend, kneel, stoop, climb stairs, reach and drive. The claimant can also only perform routine, repetitive unskilled work that does not involve concentrated exposure to dangerous moving machinery due to moderate concentration deficits from pain and medication side-effects.

(7)     The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

(8)     The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

(9)     The claimant has "more than a high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

(10)    The claimant has no transferable skills from any past relevant work (20 CFR § § 404.1568 and 416.968).

(11)    The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR §§ 404.1567 and 416.967).

(12)    Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as dividend deposit clerk (Dictionary of Occupational Titles (DOT #216.482-026), document preparer (DOT #249.587-018), cutter/paster (DOT #249.587-014) and cost rate clerk (DOT #237.367-046). There are 130, 474, 732 and 985 of these jobs in the state economy, respectively. There are 11,133, 46,679, 60,298 and 93,755 in the national economy.

(13)    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and

who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the

national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**EVIDENCE PRESENTED**

The record reveals that the plaintiff was 38 years old at the time of her alleged disability onset and 40 years old on the date of the ALJ's decision (Tr. 44, 200). She has a high school education (Tr. 58, 200), and past work experience as a sales clerk, loan

interviewer, customer service representative, and financial specialist (Tr. 52, 63-70, 216-17).

The plaintiff's claim for disability insurance benefits and supplemental security income stems from an injury she sustained to her back in March 2000 while she was working at a credit union. Apparently she was assisting some tellers in performing an audit, lifted a large heavy bag of coins, and subsequently developed lumbar back pain which became progressively worse over time (Tr. 149, 152-53, 184, 190).

The plaintiff was hospitalized between August 29 and September 2, 2002, for pelvic and back pain and underwent surgery for abdominal lysis of adhesions (Tr. 88).

Between October 28, 2002, and January 6, 2003, Dr. Theodore Pappas, the plaintiff's primary care physician, treated her for lower back pain with Neurontin (an anti-convulsant) (Tr. 98, 100).

On January 30, 2003, the plaintiff saw Dr. John Lucas, a neurologist, who diagnosed "chronic back pain without any serious structural pathology" and recommended that she see a pain specialist (Tr. 97).

In March 2003, the plaintiff saw Elizabeth Snoderly, D.O., for pain management. Dr. Snoderly treated the plaintiff with epidural steroid injections, Neurontin, and Bextra (an anti-inflammatory) (Tr. 182-86). The following month, the plaintiff underwent a nerve conduction and electromyelogram study, both of which were normal (Tr. 95-96). In an undated followup report, Dr. Snoderly stated the plaintiff "has no real evidence of disk pathology or other problems in the canal causing compression on her nerves" and that her EMG nerve conduct study was normal (Tr. 182-83).

Between June and August 2003, Dr. Jeffrey Faaberg, a pain specialist, treated the plaintiff for her lower back and leg pain with epidural steroid injections, a Racz catheter procedure, Neurontin, and Bextra (Tr. 103-12, 176-81). Between August 27 and September 11, 2003, the plaintiff underwent physical therapy (Tr. 119-26, 175). On September 12, 2003, the plaintiff returned to Dr. Faaberg complaining of ongoing back pain.

Dr. Faaberg identified pain trigger points in her thoracic and lumbar paravertebral muscle groups. The plaintiff underwent pain trigger point injections, followed by massage and a therapeutic ultrasound (Tr. 175).

The plaintiff continued to undergo physical therapy through September 22, 2003 (Tr. 113, 115, 117). On October 2, 2003, the plaintiff again saw Dr. Faaberg, who identified pain trigger points in her thoracic paravertebral, lumbar paravertebral, and gluteus medius muscle groups. He again administered pain trigger point injections and a therapeutic ultrasound (Tr. 174).

On October 23, 2003, Dr. Faaberg saw the plaintiff and noted that she had a "very flattened affect" and superficial guarding in her lower lumbar spine. He concluded that the plaintiff had pain and depression and prescribed Pamelor (an anti-depressant) (Tr. 173).

On November 10, 2003, Dr. F. Keels Baker, a State agency physician, reviewed the medical evidence and found that the plaintiff could perform light work[2] that did not require more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling. He also found that the plaintiff should avoid exposure to hazards (Tr. 140-47).

The plaintiff presented to Dr. Kerri Kolehma for an independent medical examination on November 25, 2003. She complained of constant low back pain aggravated by standing, walking, or sitting for more than 20 minutes and bending. She denied any stress or depression and reported that she was independent with her activities of daily living. Dr. Kolehma found that the plaintiff had reduced lumbar spine ranges of motion and could toe and heel walk without difficulty. She also found that the plaintiff had full motor

---

[2]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Light work requires a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. If someone can do light work, he or she can also do sedentary work, unless there are additional limiting factors such as a loss of fine dexterity or inability to sit for long periods of time. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10.

7

strength, intact sensation, normal reflexes, negative straight-leg raise testing, and "mild" pain upon palpation of her right sacroiliac joint. Dr. Kolehma diagnosed "mild" degenerative disc disease at L5-S1. She stated that the plaintiff had reached maximum medical improvement for her back injury sustained in March 2000, that her "physiological measurements fail to match known pathology," and that her subjective complaints "continue[d] to outweigh the objective findings." She assigned the plaintiff a 0% impairment rating, concluded that "there [was] no objective evidence on which to base work restrictions," and recommended a psychological evaluation and a work-hardening program (Tr. 149-51).

On April 29, 2004, the plaintiff saw Dr. Faaberg, who found that she had 25% reduced lumbar spine ranges of motion, intact reflexes, positive straight-leg-raising tests, and "significant" myofascial findings in her paraspinous, periscapular, and gluteal muscle groups. He stated that the plaintiff's best modalities were those that addressed the myofascial component of her pain, including physical therapy, trigger point injections, and e-stim acupuncture. He also stated that "these treatments need[ed] to be more frequent to afford maximal benefit." He said that she had "a moderate degree of depression with mood and affect changes" that needed to be addressed. He concluded that her "work demand tolerance [was] sedentary at best" and "she would require a very sheltered job description to fit her limited lifting capability (five pounds), her limited sitting and standing capacity (one-hour maximum), and very limited bending, pushing, crawling, stooping, or pulling" (Tr. 172).

On April 30, 2004, Jean Hutchinson, a rehabilitation counselor, evaluated the plaintiff's employability. Ms. Hutchinson noted that on September 12, 2003, Dr. Faaberg indicated that the plaintiff could lift only 10 pounds at a time and required frequent breaks. She said that the plaintiff was unable to perform any of her past work or "progress to her jobs of transferability" and concluded that the plaintiff was "unemployable" (Tr. 152-58).

On June 1, 2004, Dr. William Cain, a State agency physician, reviewed the medical evidence and found that the plaintiff could perform light work that required no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 161-68).

The plaintiff returned to Dr. Faaberg on June 10, 2004, reporting low back and neck pain of 5/10. Dr. Faaberg found that she had pain trigger points in her paraspinous musculature and appeared depressed. He prescribed Pamelor (Tr. 171).

On July 1, 2004, the plaintiff saw Dr. Faaberg and reported that Pamelor improved her sleep. Dr. Faaberg found that she continued to have myofascial findings in her paraspinous musculature and increased her dosage of Pamelor (Tr. 170).

On July 20, 2004, the plaintiff presented to Dr. Faaberg to assess her pain therapy. She reported that her pain remained at a 4/10. She also reported that she was moderately depressed, but that Pamelor was helping. Dr. Faaberg noted that the plaintiff sat on a pillow during her examination. He recommended another Racz catheter procedure and acupuncture (Tr. 169).

On August 10, 2004, Dr. Faaberg completed a physical capacity evaluation form wherein he stated that the plaintiff could sit, stand, and walk for 15 minutes each at one time and for 30 minutes each in an eight-hour workday; could lift up to five pounds, carry no weight, and never use leg controls; could never squat, crawl, or climb; and could only occasionally bend and reach. He further stated that she was moderately limited with regard to her abilities to drive and be around moving machinery (Tr. 187-89).

Dr. Timothy Zgleszewski examined the plaintiff on August 31, 2004, at the request of her attorney. The plaintiff told Dr. Zgleszewski that she had lower back and leg pain. Dr. Zgleszewski found that the plaintiff had a minimally antalgic gait on the right and could raise up onto her heels. He also found that she had normal lumbar lordosis and no lumbar shift, step-off, or muscle atrophy. The plaintiff also had full hip ranges of motion,

but decreased ranges of motion in her lumbar spine, full motor strength, intact sensation, and positive straight-leg raising tests. Dr. Zgleszewski's impression was lumbar Z-joint dysfunction and pain and early lumbar disc degeneration. He concluded that she was not at maximum medical improvement and recommended testing to rule out her Z joints as a pain generator. He said that if the plaintiff's lumbar Z-joint injections were positive, she should undergo corticosteroid injections, after which she might possibly be able to return to a sedentary job (Tr. 190-94).

At the hearing on January 13, 2005, the plaintiff testified that she experienced low back pain, migraine headaches, and depression (Tr. 200, 203, 206). She testified that her pain medications caused drowsiness and dizziness which limited her activities for several hours at a time (Tr. 201, 211-13). She said that her headaches were relieved by medications (Tr. 204). She also said that her depression was controlled by medications (Tr. 206-07). She testified that she had approximately 20 "bad days" per month where she lay down for most of the day (Tr. 206). She testified that, if she worked, she would require frequent breaks of about 20 minutes (Tr. 204). She further testified that she could sit and stand for only 15 minutes each and needed to lie down for five to six hours between 8:00 a.m. and 6:00 p.m. (Tr. 214-15).

The plaintiff stated that she sometimes did home exercises recommended by her physical therapist for 20 to 30 minutes per day (Tr. 202-03). She said that, on a good day, she cooked things that did not require a lot of standing and helped her children with their homework (Tr. 207). She also said that she grocery shopped with some assistance, read books and took her children to the movies if she was feeling up to it (Tr. 208). She stated that she attended her daughter's basketball games, but had to sit on a pillow and alternate between sitting and standing (Tr. 208-09).

10

At the hearing, the ALJ asked Mary Cornelius, a vocational expert, to assume a hypothetical individual of the plaintiff's age and with her education and work experience who was:

> [L]imited to sedentary work . . . that does not require more than occasional, that being up to 1/3 of the workday[,] bending, kneeling, stooping, squatting, climbing stairs. This person cannot be in a job that requires crouching or crawling. This person cannot be in a job that requires work at unprotected heights or that requires use of leg controls. This person is limited to routine, repetitive unskilled work due to moderate concentration deficits from pain and medication side effects. This person cannot be in a job that requires climbing of ropes, ladders, or scaffolding.

(Tr. 216-18.) Ms. Cornelius testified that a person with such limitations could perform the unskilled sedentary positions of dividend deposit clerk (130 jobs in South Carolina, 11,133 nationally), document preparer (474 jobs in South Carolina, 46,679 nationally), cutter/paster (732 jobs in South Carolina, 60,298 nationally), and cost-rate clerk (985 jobs in South Carolina, 93,755 nationally). She also testified that these jobs would allow for a sit/stand option and could be performed by someone who could not squat (Tr. 219).

## ANALYSIS

The plaintiff alleges disability commencing September 8, 2003, due to a back impairment. The ALJ found that the plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> She needs a sit/stand option. [She] can never crouch, crawl, work at unprotected heights, operate leg controls, push, pull, squat, or climb ropes, ladders or scaffolds. She can occasionally bend, kneel, stop, climb stairs, reach, and drive. [She] can also only perform routine, repetitive unskilled work that does not involve concentrated exposure to dangerous moving machinery due to moderate concentration deficits from pain and medication side-effects.

(Tr. 19, 21). The ALJ further found that the plaintiff could not perform her past work, but she could perform other work, including the unskilled sedentary jobs of document preparer, cutter/paster, and cost rate clerk (Tr. 20, 22).

The plaintiff, who was represented by counsel at the hearing and before the Appeals Council but is proceeding *pro se* in this action, argues that the ALJ erred by (1) failing to properly evaluate the opinion of her treating physician Dr. Faaberg; (2) failing to properly consider her testimony in context and her medication side effects in evaluating her credibility; and (3) failing to properly consider the testimony of the vocational expert.

### *Treating Physician*

The plaintiff argues that the ALJ failed to properly consider the opinion of treating physician Dr. Faaberg. On August 10, 2004, Dr. Faaberg opined that the plaintiff could not sit, stand, or walk for a total of more than 30 minutes each in an eight-hour workday, lift more than five pounds, carry any weight, or squat (Tr. 187-89). The ALJ founds as follows as to Dr. Faaberg's opinion:

> The undersigned is unable to accept Dr. Faaberg's August 10, 2004, opinion regarding the claimant's ability to work. That opinion is inconsistent with the medical evidence of record, as a whole and Dr. Faaberg's own treatment notes. For example, on November 25, 2003, the claimant noted that she was independent with her activities of daily living. Her lumbar spine also had normal lateral flexion, flexion to thirty degrees and extension to ten degrees, with no muscle spasm. Her hip and knee ranges of motion were normal, as was her gait, heel walking and toe walking. Straight leg raising was also negative. Dr. Kolehma opined that the claimant had no objective evidence on which to base work restrictions.
>
> In addition, two Disability Determination Services' physicians found the claimant capable of performing a wide range of light work. However, when giving the claimant the full benefit of the doubt, the undersigned finds that she has significant additional limitations, consistent with Dr. Faaberg's earlier opinions that the claimant could only lift ten pounds at a time, and could only

> perform limited sitting, standing, bending, pushing, crawling, stooping and pulling.

(Tr. 19). The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §416.927(d)(2) (2006); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. §404.1527(d)(2)-(5). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the

13

> factors provided in 20 C.F.R. 404.1527 and 416.927. *In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight*.

*Id.* 1996 WL 374188, *4 (emphasis added).

While Dr. Faaberg's opinion may not have been entitled to controlling weight based upon the evidence cited by the ALJ, the ALJ should have further considered the weight to be given to the opinion in light of the above factors. Dr. Faaberg, a pain specialist, treated the plaintiff on numerous occasions since at least June 2003. Based upon the foregoing, this court finds that upon remand, the ALJ should be instructed to further evaluate the weight to be given to Dr. Faaberg's opinion in accordance with the above-cited law. In support of her argument, the plaintiff submitted to this court additional records, including Dr. Faaberg's office notes from December 1, 2004, to June 8, 2006, and several forms completed by Dr. Faaberg at her private disability insurer's request between September 17, 2004, and August 11, 2006 (pl. brief, pp. 13-16, 22-27).[3] While some of these documents were in existence at the time of the administrative proceedings, they were not submitted to the ALJ or to the Appeals Council. The defendant argues that the evidence is neither new nor material and should not be considered by the court. In accordance with sentence four of Title 42, United States Code, Section 405(g), this court has not considered this evidence for purposes of determining whether the Commissioner's final decision was supported by substantial evidence. However, since remand is appropriate based upon the ALJ's failure to properly consider the weight to be given to Dr. Faaberg's opinion, this court further finds that upon remand the additional evidence submitted by this *pro se* plaintiff should be made a part of the record before the ALJ.

---

[3] The remainder of the documents submitted by the plaintiff were duplicates of medical records already included in the administrative record (def. brief 11, n. 16).

14

*Credibility*

>The ALJ found as follows with regard to the plaintiff's credibility:
>
>At the hearing, the claimant testified that she suffers from a back injury with low back pain, migraine headaches and depression. She takes pain medication that causes drowsiness and dizziness, and can only sit for fifteen minutes at a time, according to her statements. On the other hand, the claimant testified that she performs home exercises, helps her children with homework, grocery shops, goes to the movies, and attends her daughter's basketball games. The undersigned finds that the testimony of the claimant is not fully credible concerning the symptoms and the extent of her limitations. Neither the severity nor the extent are supported by the objective medical evidence of record.

(Tr. 18).

The plaintiff argues that the ALJ took her testimony regarding her activities out of context, since she also testified that she did home exercises only "sometimes," cooked and helped her children with their homework on "good days," went to the movies "when she felt up to it," and was required to sit on a pillow when she went to her daughter's basketball games (pl. br. 2; Tr. 202-03, 207-09).

>[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor

15

recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, *4.

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1) the individual's daily activities;

(2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3) factors that precipitate and aggravate the symptoms;

(4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

The ALJ failed to properly evaluate the plaintiff's pain. He completely skipped the first step of the pain evaluation. Clearly the plaintiff has a medical impairment that could reasonably be expected to produce the pain alleged. It does not appear that the ALJ

16

considered the factors listed above, including the plaintiff's medications and their side effects, in evaluating the plaintiff's credibility. Further, a claimant is not required to be bedridden or completely helpless in order to be found to be disabled. *Totten v. Califano*, 624 F.2d 10, 11-12 (4th Cir. 1980). Upon remand, the ALJ should be instructed to reconsider the plaintiff's credibility in accordance with the above-cited law.

*Vocational Expert*

The plaintiff next alleges that the ALJ "disregarded" the testimony of the vocational expert. It appears that the plaintiff is arguing that the ALJ erred by not adopting the vocational expert's testimony upon questioning by her attorney that a hypothetical person who needed to elevate her legs 40-50% of the time and needed to sleep for three to four hours during the day could not perform any of the jobs she previously cited (Tr. 221-22). Upon remand and consideration of the plaintiff's subjective complaints and Dr. Faaberg's opinion in accordance with the foregoing, the ALJ should be instructed to reconsider the vocational expert's testimony in light of that analysis.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.

s/William M. Catoe<br>
United States Magistrate Judge

June 7, 2007

Greenville, South Carolina

17